1  GEORGE H. KIM (SBN 162767)
   **LAW OFFICES OF GEORGE H. KIM**
2  9800 Wilshire Boulevard, Suite 150
3  Beverly Hills, California 90212-1804
   Telephone (310) 746-4099
4  Facsimile (310) 861-0525
   Email: george@gkimlaw.com
5

6
   Attorneys for: Defendants Theodore Kohan and Business to Business Markets, Inc.
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                **LOS ANGELES DIVISION**
11

12  In re:                              )  Case No.  2:08-bk-32333-BR
13                                      )
            NAMCO CAPITAL GROUP, INC.   )  Chapter 11
14          A California Corporation;   )
                                        )
15               Debtor.                )
                                        )
16  _____)
                                        )  Adversary Case No. 2:10-ap-02489-BR
17  BRADLEY D. SHARP, Chapter 11 Trustee,)
                                        )
18               Plaintiff,            )  ANSWER AND COUNTERCLAIMS OF
                                        )  DEFENDANTS THEODORE KOHAN AND
19          v.                          )  BUSINESS TO BUSINESS MARKETS, INC.
                                        )
20                                      )
21  THEODORE KOHAN, an individual, and  )  Status Conference:
    BUSINESS TO BUSINESS MARKETS,       )      Date:  11/23/10
22  INC., A California Corporation,      )      Time:  10:00 AM
                                        )      Place: U.S. Bankruptcy Court
23               Defendants.            )             Courtroom 1668
                                        )             255 E. Temple Street
24  _____)             Los Angeles, CA 90012
                                        )
25  THEODORE KOHAN, an individual, and  )
    BUSINESS TO BUSINESS MARKETS, INC., )
26  A California Corporation,            )
                                        )
27               Counterclaimants,     )
                                        )
28

                                        1
   ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

1     v.                           )

2                                  )

BRADLEY D. SHARP, Chapter 11 Trustee,    )

3                                  )

                 Counterdefendant.         )

4

---

Defendants Theodore Kohan and Business to Business Markets, Inc. (collectively

"Defendants"), for themselves and themselves alone, hereby file this Answer to the Complaint

filed herein by Plaintiff Bradley D. Sharp, Chapter 11 Trustee for the Estate of Namco Capital

Group, Inc.

1.       In Answer to Paragraph 1 of the Complaint, Defendants are without sufficient

knowledge or information to form a belief as to the truth of the allegations contained in Paragraph

1 of the Complaint, and on that basis deny each and every allegation alleged therein.

2.       In Answer to Paragraph 2 of the Complaint, Defendants admit the allegations

contained therein.

3.       In Answer to Paragraph 3 of the Complaint, Defendants admit that this Court has

jurisdiction over the third, fourth, fifth, sixth, ninth, tenth, eleventh and twelfth Claims for Relief

alleged in the Complaint. Defendants further admit that venue is proper in this Court for the third,

fourth, fifth, sixth, ninth, tenth, eleventh and twelfth Claims for Relief alleged in the Complaint.

Except as expressly admitted herein, Defendants deny each and every allegation contained in

Paragraph 3 of the Complaint. Defendants further deny that this Court has jurisdiction over the

Counterclaims alleged herein by Defendants..

4.       In Answer to Paragraph 4 of the Complaint, Defendants admit the allegations

contained therein.

5.       In Answer to Paragraph 5 of the Complaint, Defendants admit that the third, fourth,

fifth, sixth, ninth, tenth, eleventh and twelfth Claims for Relief alleged in the Complaint are core

proceedings. Except as expressly admitted herein, Defendants deny each and every allegation

contained in Paragraph 5 of the Complaint Defendants further deny that the Counterclaims

alleged herein by Defendants are core proceedings.

2

ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

1    6.    In Answer to Paragraph 6 of the Complaint, Defendants admit the allegations

2  contained therein.

3    7.    In Answer to Paragraph 7 of the Complaint, Defendants admit that Kohan was an

4  individual residing in the Central District of California.  Except as expressly admitted herein,

5  Defendants deny each and every allegation contained in Paragraph 7 of the Complaint.

6    8.    In Answer to Paragraph 8 of the Complaint, Defendants admit that Business to

7  Business Markets, Inc. is a corporation organized and existing under and by virtue of the laws of

8  the State of California and having its principal place of business within the jurisdiction of this

9  Court.  Except as expressly admitted herein, Defendants deny each and every allegation contained

10  in Paragraph 8 of the Complaint.

11    9.    In Answer to Paragraph 9 of the Complaint, Defendants are without sufficient

12  knowledge or information to form a belief as to the truth of the allegations contained in Paragraph

13  9 of the Complaint, and on that basis denies each and every allegation alleged therein.

14    10.    In Answer to Paragraph 10 of the Complaint, Defendants admit the allegations

15  contained therein.

16    11.    In Answer to Paragraph 11 of the Complaint, Defendants are without sufficient

17  knowledge or information to form a belief as to the truth of the allegations contained in Paragraph

18  11 of the Complaint, and on that basis denies each and every allegation alleged therein.

19    12.    In Answer to Paragraph 12 of the Complaint, Defendants are without sufficient

20  knowledge or information to form a belief as to the truth of the allegations contained in Paragraph

21  12 of the Complaint, and on that basis denies each and every allegation alleged therein.

22    13.    In Answer to Paragraph 13 of the Complaint, Defendants reference, incorporate and

23  allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 11,

24  inclusive, of this Answer.

25    14.    In Answer to Paragraph 14 of the Complaint, Defendants deny each and every

26  allegation contained in Paragraph 14 of the Complaint.

27    15.    In Answer to Paragraph 15 of the Complaint, Defendants deny each and every

28  allegation contained in Paragraph 15 of the Complaint.

1        16.     In Answer to Paragraph 16 of the Complaint, Defendants reference, incorporate and

2   allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 11,

3   inclusive, of this Answer.

4        17.     In Answer to Paragraph 17 of the Complaint, Defendants deny each and every

5   allegation contained in Paragraph 17 of the Complaint.

6        18.     In Answer to Paragraph 18 of the Complaint, Defendants deny each and every

7   allegation contained in Paragraph 18 of the Complaint.

8        19.     In Answer to Paragraph 19 of the Complaint, Defendants reference, incorporate and

9   allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 11,

10   inclusive, of this Answer.

11        20.     In Answer to Paragraph 20 of the Complaint, Defendants deny each and every

12   allegation contained in Paragraph 20 of the Complaint.

13        21.     In Answer to Paragraph 21 of the Complaint, Defendants deny each and every

14   allegation contained in Paragraph 21 of the Complaint.

15        22.     In Answer to Paragraph 22 of the Complaint, Defendants reference, incorporate and

16   allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 11,

17   inclusive, of this Answer.

18        23.     In Answer to Paragraph 23 of the Complaint, Defendants deny each and every

19   allegation contained in Paragraph 23 of the Complaint.

20        24.     In Answer to Paragraph 24 of the Complaint, Defendants deny each and every

21   allegation contained in Paragraph 24 of the Complaint.

22        25.     In Answer to Paragraph 25 of the Complaint, Defendants reference, incorporate and

23   allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 11,

24   inclusive, of this Answer.

25        26.     In Answer to Paragraph 26 of the Complaint, Defendants deny each and every

26   allegation contained in Paragraph 26 of the Complaint.

27        27.     In Answer to Paragraph 27 of the Complaint, Defendants deny each and every

28   allegation contained in Paragraph 27 of the Complaint.

4

ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

1    28.    In Answer to Paragraph 28 of the Complaint, Defendants reference, incorporate and

2    allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 11,

3    inclusive, of this Answer.

4    29.    In Answer to Paragraph 29 of the Complaint, Defendants deny each and every

5    allegation contained in Paragraph 29 of the Complaint.

6    30.    In Answer to Paragraph 30 of the Complaint, Defendants deny each and every

7    allegation contained in Paragraph 30 of the Complaint.

8    31.    In Answer to Paragraph 31 of the Complaint, Defendants reference, incorporate and

9    allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 10,

10    inclusive, and Paragraph 12, of this Answer.

11    32.    In Answer to Paragraph 32 of the Complaint, Defendants deny each and every

12    allegation contained in Paragraph 32 of the Complaint.

13    33.    In Answer to Paragraph 33 of the Complaint, Defendants deny each and every

14    allegation contained in Paragraph 33 of the Complaint.

15    34.    In Answer to Paragraph 34 of the Complaint, Defendants reference, incorporate and

16    allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 10,

17    inclusive, and Paragraph 12, of this Answer.

18    35.    In Answer to Paragraph 35 of the Complaint, Defendants deny each and every

19    allegation contained in Paragraph 35 of the Complaint.

20    36.    In Answer to Paragraph 36 of the Complaint, Defendants deny each and every

21    allegation contained in Paragraph 36 of the Complaint.

22    37.    In Answer to Paragraph 37 of the Complaint, Defendants reference, incorporate and

23    allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 10,

24    inclusive, and Paragraph 12, of this Answer.

25    38.    In Answer to Paragraph 38 of the Complaint, Defendants deny each and every

26    allegation contained in Paragraph 38 of the Complaint.

27    39.    In Answer to Paragraph 39 of the Complaint, Defendants deny each and every

28    allegation contained in Paragraph 39 of the Complaint.

5

ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

1      40.    In Answer to Paragraph 40 of the Complaint, Defendants reference, incorporate and

2    allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 10,

3    inclusive, and Paragraph 12, of this Answer.

4      41.    In Answer to Paragraph 41 of the Complaint, Defendants deny each and every

5    allegation contained in Paragraph 41 of the Complaint.

6      42.    In Answer to Paragraph 42 of the Complaint, Defendants deny each and every

7    allegation contained in Paragraph 42 of the Complaint.

8      43.    In Answer to Paragraph 43 of the Complaint, Defendants reference, incorporate and

9    allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 10,

10    inclusive, and Paragraph 12, of this Answer.

11      44.    In Answer to Paragraph 44 of the Complaint, Defendants deny each and every

12    allegation contained in Paragraph 44 of the Complaint.

13      45.    In Answer to Paragraph 45 of the Complaint, Defendants deny each and every

14    allegation contained in Paragraph 45 of the Complaint.

15      46.    In Answer to Paragraph 46 of the Complaint, Defendants reference, incorporate and

16    allege herein, each of and all of the admissions and denials set forth in Paragraphs 1 through 10,

17    inclusive, and Paragraph 12, of this Answer.

18      47.    In Answer to Paragraph 47 of the Complaint, Defendants deny each and every

19    allegation contained in Paragraph 47 of the Complaint.

20      48.    In Answer to Paragraph 48 of the Complaint, Defendants deny each and every

21    allegation contained in Paragraph 48 of the Complaint.

22

23    <u>AFFIRMATIVE DEFENSES</u>

24      49.    As a first and separate affirmative defense, Defendants allege that the Complaint,

25    and each and every cause of action alleged therein, is barred by the applicable statute of

26    limitations, including but not limited to 11 U.S.C. sections 546 and 548.

27      50.    As a second and separate affirmative defense, Defendants allege that the

28    Complaint, and each and every cause of action alleged therein, is barred by the applicable statute

1  of limitations, including but not limited to California Code of Civil Procedure sections 337, 338,

2  339 and 343.

3       51.    As a third and separate affirmative defense, Defendants allege that the Complaint,

4  and each and every cause of action alleged therein, is barred by the applicable statute of

5  limitations, including but not limited to California Civil Code section 3439.09.

6       52.    As a fourth and separate affirmative defense, Defendants allege that the Complaint,

7  and each and every cause of action alleged therein, is barred by the statute of frauds.

8       53.    As a fifth and separate affirmative defense, Defendants allege that the Complaint,

9  and each and every cause of action alleged therein, is barred under Civil Code section 3439.08 in

10  that Defendants took the alleged transfers in good faith and for reasonably equivalent value.

11       54.    As a sixth and separate affirmative defense, Defendants allege that the Complaint,

12  and each and every cause of action alleged therein, is barred by the doctrine of accord and

13  satisfaction.

14       55.    As a seventh and separate affirmative defense, Defendants allege that the

15  Complaint, and each and every cause of action alleged therein, is barred by the doctrine of

16  estoppel.

17       56.    As a eighth and separate affirmative defense, Defendants allege that the Complaint,

18  and each and every cause of action alleged therein, is barred by the fraud of Debtor Namco Capital

19  Group, Inc.

20       57.    As a ninth and separate affirmative defense, Defendants allege that the Complaint,

21  and each and every cause of action alleged therein, is barred by the fraud of others, including but

22  not limited to Ezri Namvar, members of his family, and entities owned and/or controlled by Ezri

23  Namvar and members of his family.

24       58.    As a tenth and separate affirmative defense, Defendants allege that by virtue of the

25  fraud of Debtor Namco Capital Group, Inc., Defendants are entitled to a setoff on the claims

26  asserted by the Trustee in the Complaint, and each and every cause of action alleged therein.

27       59.    As a eleventh and separate affirmative defense, Defendants allege that by virtue of

28  the fraud of Ezri Namvar, members of his family, and entities owned and/or controlled by Ezri

1 | Namvar and members of his family, Defendants are entitled to a setoff on the claims asserted by

2 | the Trustee in the Complaint, and each and every cause of action alleged therein.

3 |      60.    As a twelfth and separate affirmative defense, Defendants allege that the

4 | Complaint, and each and every cause of action alleged therein, is barred by the breach of contract

5 | of Debtor Namco Capital Group, Inc.

6 |      61.    As a thirteenth and separate affirmative defense, Defendants allege that the

7 | Complaint, and each and every cause of action alleged therein, is barred by the breach of contract

8 | of others, including but not limited to Ezri Namvar, members of his family, and entities owned

9 | and/or controlled by Ezri Namvar and members of his family.

10 |      62.    As a fourteenth and separate affirmative defense, Defendants allege that by virtue

11 | of the breach of contract of Debtor Namco Capital Group, Inc., Defendants are entitled to a setoff

12 | on the claims asserted by the Trustee in the Complaint, and each and every cause of action alleged

13 | therein.

14 |      63.    As a fifteenth and separate affirmative defense, Defendants allege that by virtue of

15 | the breach of contract of Ezri Namvar, members of his family, and entities owned and/or

16 | controlled by Ezri Namvar and members of his family, Defendants are entitled to a setoff on the

17 | claims asserted by the Trustee in the Complaint, and each and every cause of action alleged

18 | therein.

19 |      64.    As a sixteenth and separate affirmative defense, Defendants allege that the

20 | Complaint, and each and every cause of action alleged therein, is barred by breaches of duty owed

21 | by Debtor Namco Capital Group, Inc. to Defendants.

22 |      65.    As a seventeenth and separate affirmative defense, Defendants allege that the

23 | Complaint, and each and every cause of action alleged therein, is barred by breaches of duty owed

24 | by others, including but not limited to Ezri Namvar, members of his family, and entities owned

25 | and/or controlled by Ezri Namvar and members of his family, to Defendants.

26 |      66.    As a eighteenth and separate affirmative defense, Defendants allege that by virtue

27 | of the breaches of duty of Debtor Namco Capital Group, Inc., Defendants are entitled to a setoff

28 |

1  on the claims asserted by the Trustee in the Complaint, and each and every cause of action alleged

2  therein.

3      67.    As a nineteenth and separate affirmative defense, Defendants allege that by virtue

4  of the breaches of duty of Ezri Namvar, members of his family, and entities owned and/or

5  controlled by Ezri Namvar and members of his family, Defendants are entitled to a setoff on the

6  claims asserted by the Trustee in the Complaint, and each and every cause of action alleged

7  therein.

8      68.    As a twentieth and separate affirmative defense, Defendants allege that the

9  Complaint, and each and every cause of action alleged therein, is barred by illegality.

10      69.    As a twenty first and separate affirmative defense, Defendants allege that the

11  Complaint, and each and every cause of action alleged therein, is barred by the doctrine of laches.

12      70.    As a twenty second and separate affirmative defense, Defendants allege that the

13  Complaint, and each and every cause of action alleged therein, is barred by the doctrine of res

14  judicata.

15      71.    As a twenty third and separate affirmative defense, Defendants allege that the

16  Complaint, and each and every cause of action alleged therein, is barred by the doctrine of waiver.

17      72.    As a twenty fourth and separate affirmative defense, Defendants allege that the

18  Complaint, and each and every cause of action alleged therein, has been released.

19      73.    As a twenty fifth and separate affirmative defense, Defendants allege that the

20  recovery under the First, Second, Seventh and Eighth Claims for Relief are barred by Plaintiff's

21  failure to timely provide a "bill of particulars" under California Code of Civil Procedure section

22  454.

23      74.    As a twenty sixth and separate affirmative defense, Defendants allege that the

24  Complaint, and each and every cause of action alleged therein, is barred by Plaintiff's failure to

25  mitigate his alleged damages.

26      75.    As a twenty seventh and separate affirmative defense, Defendants allege that the

27  Complaint, and each and every cause of action alleged therein, is barred by Plaintiff's failure to

28  obtain or record a deed of trust securing the alleged obligations.

1  76.  As a twenty eighth and separate affirmative defense, Defendants allege that the

2  Complaint, and each and every cause of action alleged therein, is barred by the doctrine of unclean

3  hands.

4  77.  As a twenty ninth and separate affirmative defense, Defendants allege that the

5  Complaint, and each and every cause of action alleged therein, is barred because the loans and

6  transfers if any, were secured by real property and were non-recourse.

7  78.  As a thirtieth and separate affirmative defense, Defendants allege that the

8  Complaint, and each and every cause of action alleged therein, is barred because the loans and

9  transfers if any, were not personally guaranteed.

10

11  ## PRAYER FOR RELIEF

12  WHEREFORE, Defendants pray for judgment against Plaintiff as follows:

13  1.  That Plaintiff take nothing by reason of his Complaint, and each and every cause of

14  action stated therein, and that judgment be rendered in favor of Defendants;

15  2.  That Defendants be awarded their costs of suit incurred in defense of this action;

16  and

17  3.  For such other relief as the Court deems proper.

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

## COUNTERCLAIMS

Counterclaimants Theodore Kohan and Business to Business Markets allege, as counterclaims, as follows:

79.    The counterclaims alleged herein are non-core proceedings. The Kohan Parties do not consent to entry of final orders or judgment on said counterclaims by the bankruptcy judge.

The Parties

80.    Counter-claimant Business to Business Markets, Inc. ("B2B") is at all times relevant hereto a California corporation with its principal place of business in Los Angeles, California.

81.    Counter-claimant Theodore Kohan ("Kohan") is an individual residing in the State of California, County of Los Angeles. (B2B and Kohan are collectively referred to herein as the "Kohan Parties.").

82.    The Kohan Parties are informed and believe and thereon allege that Debtor Namco Capital Group, Inc. ("Namco") is at all times relevant hereto a California corporation with its principal place of business in Los Angeles, California.

83.    On or about December 22, 2008, an involuntary Chapter 11 bankruptcy petition was filed against Namco in the United States Bankruptcy Court for the Central District of California, case no. 08-32333-BR.

84.    The Kohan Parties are informed and believe and thereon allege that as of the date the involuntary bankruptcy petition was filed against Namco, Ezri Namvar was the President, Chief Financial Officer, sole director and sole shareholder of Namco.

85.    On or about December 22, 2008, an involuntary Chapter 11 bankruptcy petition was filed against Ezri Namvar in the United States Bankruptcy Court for the Central District of California, case no. 2:08-bk-32349-BR.

86.    On or about May 8, 2009, Counter-defendant Bradley D. Sharp ("Trustee") was appointed the Chapter 11 Trustee for the Estate of Namco Capital Group, Inc.

The Namvar Family

87.    The Kohan Parties are informed and believe and thereon allege that Mousa
Namvar, Ramin Namvar, Hooshang (Sean) Namvar and Homayoun (Tony) Namvar are the
brothers of Ezri Namvar.

88.    The Kohan Parties are informed and believe and thereon allege that Lida Shraga,
Hilda Bayanfar and Helen Shadi are the sisters of Ezri Namvar.

89.    The Kohan Parties are informed and believe and thereon allege that Benjamin
Namvar, Daniel Namvar, Malka Namvar and Shirah Namvar are the children of Ezri Namvar.
(Ezri Namvar's brothers, sisters and children are collectively referred to herein as the "Namvar
Family.")


The Namvar Family Controlled Entities

90.    The Kohan Parties are informed and believe and thereon allege that between 2002
and 2008, Namco engaged in $5.9 billion in cash and non-cash transactions filtered and disbursed
through nearly 400 limited liability companies ("LLCs") owned either in whole or in part by Ezri
Namvar and/or members of the Namvar Family.  In the majority of these LLC investments, Ezri
Namvar and/or the Namvar Family put up little or no capital to secure their interests and rarely
assumed personal liability for debts associated with the LLC.  Namco would advance funds to
acquire property for the LLC, and ownership would be allocated to Ezri Namvar and/or
Namvar Family.

91.    The Kohan Parties are informed and believe and thereon allege that the LLCs
owned, either in whole or in part, by Ezri Namvar and/or the Namvar Family relevant to their
counterclaims include:

        a.      Namco Capital Group, Inc. ("Namco");

        b.      Namwest LLC ("Namwest");

        c.      Beshmada LLC ("Beshmada");

        d.      Woodman Partners LLC ("Woodman");

        e.      Namwest Town Lakes LLC ("NTL");

1            f.      Namwest Town Lakes II, LLC ("NTL II");

2            g.      Avonnam LLC ("Avonam");

3            h.      Lancam Properties LLC ("Lancam");

4            i.      Seven Investment Holdings LLC ("Seven")

5            j.      Tricommerce LLC ("Tricommerce");

6            k.      1175 SMV LLC ("1175 SMV")

7            l.      MV 14 LLC ("MV 14");

8            m.      Coach 20 LLC ("Coach 20");

9            n.      Security Pacific Bank; and

10            o.      Security Pacific Financial.

11 (Namco, Namwest, Beshmada, Woodman, NTL, NTL II, Avonam, Lancam, Seven, Tricommerce

12 1175 SMV, MV 14, Coach 20, Security Pacific Bank and Security Pacific Financial are

13 collectively referred to herein as the "Namvar Entities.")

14       92.      On or about October 9, 2008, Namwest, LLC filed for bankruptcy protection in the

15 United States Bankruptcy Court for the District of Arizona, case number 2:08-bk-13935-CGC.

16       93.      On or about October 10, 2008, NTL II filed for bankruptcy protection in the United

17 States Bankruptcy Court for the District of Arizona, case number 2:08-bk-14027-CGC.

18       94.      On or about June 19, 2009, an involuntary bankruptcy petition was filed against

19 Beshmada LLC in the United States Bankruptcy Court for the Central District of California, case

20 number 2:09-bk-25523-BR.

21       95.      On or about May 12, 2010, the NTL II bankruptcy was dismissed.

22       96.      The Kohan Parties are informed and believe and thereon allege that at all relevant

23 times, Ezri Namvar was the principal, agent, servant, employee, and/or alter ego of the Namvar

24 Family and the Namvar Entities, and each of them, and that in engaging in the conduct alleged

25 herein, was acting within the course an scope of said relationship, and that each member of the

26 Namvar Family and the Namvar Entities, and each of them, authorized or ratified the conduct

27 alleged herein.

28

1                            <u>COMMON ALLEGATIONS</u>

2   <u>The Club Rio Property</u>

3        97.    On approximately August 5, 2004, Triyar Capital, LLC, as buyer, and The

4 Graduate Restaurants, Inc., as seller, entered into an agreement ("Club Rio Option Agreement")

5 whereby Triyar obtained the right to purchase approximately 9.94 acres of real property in Tempe,

6 Arizona legally described as:

7       <u>Parcel No. 1:</u>

8
9            The East 300 feet of the South 440 feet of the North 880 feet of the
West 495 feet of the Northeast quarter of the Northeast quarter of
Section 15, Township 1 North, Range 4 East of the Gila and Salt
10            River Base and Meridian, Maricopa County, Arizona.

11       <u>Parcel No. 2:</u>

12
13            The South 134.96 feet of the North 1134.96 feet of the East 763.05
feet of the West 1258.05 feet of the Northeast quarter of the
Northeast quarter of Section 15, Township 1 North, Range 4 East of
14            the Gila and Salt River Base and Meridian, Maricopa County,
15            Arizona.

16       <u>Parcel No. 3:</u>

17            The South 200 feet of the North 1000 feet of the Northeast quarter
of the Northeast quarter of Section 15, Township 1 North, Range 4
18            East of the Gila and Salt River Base and Meridian, Maricopa
19            County, Arizona;

20            EXCEPT the West 495 feet thereof; and

21            EXCEPT the West 5 feet of the East 55 feet of the South 200 feet of
22            the North 1000 feet of the Northeast quarter of the Northeast quarter
of Section 15, Township 1 North, Range 4 East of the Gila and Salt
23            River Base and Meridian, Maricopa County, Arizona; and

24            EXCEPT the West 10 feet of the East 65 feet of the South 65 feet of
25            the South 200 feet of the North 1000 feet of the said Northeast
quarter of Section 15.
26

27

28

Parcel No. 4:

> The South 200 feet of the North 600 feet of the Northeast quarter of the Northeast quarter of Section 15, Township 1 North, Range 4 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona;

> EXCEPT the East 568 feet thereof; and also

> EXCEPT the WEST 495 feet thereof.

(Parcel Nos. 1, 2, 3 and 4 are collectively referred to as the "Club Rio Property").

98.     On approximately October 4, 2004, Triyar assigned its rights under the Club Rio Option Agreement to B2B.

99.     Between October 2004 and December 2004, Kohan and Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, engaged in negotiations the end result of which would be that Kohan would assign B2B's rights under the Club Rio Option Agreement to a new entity to be formed.

100.    In the course of these negotiations with Kohan, among other representations, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, represented to Kohan that:

(a)     Kohan, or an entity owned or controlled by Kohan, would receive a 27% ownership interest in the newly formed entity that would acquire B2B's rights under the Club Rio Option Agreement;

(b)     Kohan, or an entity owned or controlled by Kohan, would receive a 27% ownership interest in any other entity organized, owned or controlled by Ezri Namvar, the Namvar Family and/or the Namvar Entities that acquired real property in the vicinity of the Club Rio Property;

(c)     Kohan would be one of no more than two managers of the newly formed entity or entities;

(d)     Namwest, James Henrie, and/or Michael McBride had the expertise, experience, and financial capability to entitle, develop, finance, and construct mixed-use

residential and commercial or other complex projects on the Club Rio Property and any

other neighboring property subsequently acquired;

(e)    the titleholder of record would timely finance and refinance the Club Rio

Property and any other neighboring property subsequently acquired under the most

competitive terms and conditions then achievable;

(f)    the titleholder of record would timely entitle, develop and sell the Club Rio

Property and any other neighboring property subsequently acquired;

(g)    interest and other charges on any indebtedness incurred in connection with

the acquisition, entitlement, development, and sale of the Club Rio Property and other

project properties would be minimized at or below market rates; and

(h)    Ezri Namvar and any entity owned or controlled by Ezri Namvar, the

Namvar Family and/or the Namvar Entities would not engage in any conduct that

increased the interest, management fees, or other project costs incurred or claimed by Ezri

Namvar, the Namvar Family and/or the Namvar Entities with respect to the Club Rio

Property and any other property acquired (collectively, "Club Rio Representations").

101.    On or about December 8, 2004, consistent with the Club Rio Representations,

Articles of Organization for NTL were filed.  The original members of NTL were Namwest, LLC

and Arizona Tempe Town Lakes, LLC ("ATTL"), an entity owned and controlled by Kohan.

102.    In reliance on the Club Rio Representations, in December 2004, Ezri Namvar, for

himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, and

Kohan entered into an agreement whereby Kohan agreed to assign B2B's rights under the Club

Rio Option Agreement to a new entity to be created for the purpose of purchasing the Club Rio

Property.

103.    On or about December 21, 2004, in reliance on the Club Rio Representations,

Kohan caused B2B to assign its rights under the Club Rio Option Agreement to NTL.  In

exchange, pursuant to the Club Rio Representations, Kohan, or an entity controlled by Kohan, was

to own and control 27% of the newly formed entity, and Kohan was to be one of no more than two

(2) managers of the newly formed entity.

104.   On or about December 22, 2004, after B2B has assigned its interest in the Club Rio Option Agreement to NTL, and days before escrow was to close on the Club Rio Property, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, advised Kohan that he was transferring Namwest's membership interest in NTL to Woodman, and asked that Kohan consent and transfer ATTL's interest in NTL to Woodman.

105.   In connection with his request, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, represented to Kohan that in twelve months, 27% of the membership interests in NTL, or its successor, would be transferred back to Kohan, ATTL, or another entity owned or controlled by Kohan, at Kohan's election (the "Woodman Representations").

106.   As a result of and in reliance on the Club Rio Representations and the Woodman Representations, Kohan agreed to transfer ATTL's interest in NTL to Woodman Partners, LLC. On December 22, 2004, NTL filed a first amendment to its Articles of Organization with the Arizona Corporation Commission purporting to remove Namwest and ATTL as members of NTL, and making Woodman the sole member of NTL. The amendment also purported to change the manager of NTL to Richard Marr/Namco Capital Group, Inc.

107.   On or about December 23, 2004, NTL, as buyer, closed escrow and acquired title to the Club Rio Property.

The Wilde Property

108.   Shortly after the close of escrow on the Club Rio Property, Kohan and/or other persons acting on behalf of the Kohan Parties, located certain parcels of unimproved real property adjacent to and in the vicinity of the Club Rio Property, and began negotiations to purchase said properties at advantageous prices.

109.   On approximately May 2, 2005, NTL II was formed by filing Articles of Organization with the Arizona Corporation Commission. The Articles of Organization identify Namwest as the manager and sole member of NTL II. NTL II was formed for the purpose of purchasing these parcels adjacent to and in the vicinity of the Club Rio Property.

1    110.    At the request of Ezri Namvar, for himself and on behalf of the Namvar Family

2    and/or the Namvar Entities, including Namco, the Kohan Parties stepped aside and let Ezri

3    Namvar and Steven M. Skarphol and/or Namwest complete the negotiations to purchase the

4    properties adjacent to and in the vicinity of the Club Rio Property.

5    111.    The Kohan Parties agreed to step aside in reliance on the representations made by

6    Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities,

7    including Namco, that:

8    (a)    Kohan, or an entity owned or controlled by Kohan, would receive a 27%

9    ownership interest in the newly formed entity that would acquire title to the Wilde I, II,

10    and III Properties (defined below);

11    (b)    Kohan would be one of no more than two managers of the newly formed

12    entity;

13    (c)    the titleholder of record would timely finance and refinance the Wilde I, II,

14    and III Properties under the most competitive terms and conditions then achievable;

15    (d)    the titleholder of record would timely entitle, develop and sell the Wilde I,

16    II, and III Properties;

17    (e)    interest and other charges on any indebtedness incurred in connection with

18    the acquisition, entitlement, development, and sale of the Wilde I, II, and III Properties

19    would be minimized at or below market rates; and

20    (f)    Ezri Namvar and any entity owned or controlled by Ezri Namvar, the

21    Namvar Family and/or the Namvar Entities would not engage in any conduct that

22    increased the interest, management fees, or other project costs or fees incurred or claimed

23    by Ezri Namvar, the Namvar Family and/or the Namvar Entities with respect to the Wilde

24    I, II, and III Properties (the "Wilde Representations").

25    112.    On or about August 26, 2005, NTL II purchased approximately .74 acres of real

26    property located on Scottsdale Road just north of State Route 202 in Tempe, Arizona ("Wilde I

27    Property"). The Wilde I Property is in the vicinity of the Club Rio Property.

28

113.     On or about August 29, 2005, NTL II purchased approximately 5.84 acres of real property located near 59th Avenue and Elliot Road, Laveen, Arizona ("Wilde II Property").

114.     On or about January 31, 2006, NTL II purchased approximately 4.88 acres adjacent to the Club Rio Property ("Wilde III Property").  (The Wilde I, II and III Properties are collectively referred to herein as the "Wilde Property.")

Namco's Financial Collapse and the Creation of Fictitious Debt

115.     The Kohan Parties are informed and believe and thereon allege that as Namco's financial situation deteriorated, but prior to the filing of the involuntary bankruptcy petitions against Namco and Ezri Namvar, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, created fictitious debt on many of the properties, made numerous assignments of this debt, and numerous assignments of ownership interests in the LLCs which own the properties.  In many instances there are multiple assignments of the same debt or ownership interests.

116.     On or about May 26, 2006, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, caused NTL II to make and execute in favor of Namco a promissory note in the principal amount of $6,000,000 ("$6,000,000 Note") to evidence an alleged loan in that amount made by Namco to NTL II.  The $6,000,000 Note is allegedly secured by a deed of trust on the Wilde Property dated May 26, 2006 allegedly executed by NTL II, as trustor, in favor of Namco, as beneficiary ("$6,000,000 Deed of Trust")

117.     The Kohan Parties are informed and believe and thereon allege that the $6,000,000 Note was fraudulent and that NTL II never received any consideration for executing the $6,000,000 Note or $6,000,000 Deed of Trust.  The Kohan Parties are informed and believe and thereon allege that Namco never funded the $6,000,000 Note.

118.     On or about September 20, 2007, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, caused NTL II to make and execute in favor of Namco a promissory note in the principal amount of $13,000,000 ("$13,000,000 Note") to evidence an alleged loan made by Namco to NTL II.  The $13,000,000 Note includes the

1    alleged indebtedness evidenced by the $6,000,000 Note. The $13,000,000 Note is allegedly

2    secured by an all inclusive deed of trust on the Wilde Property dated September 20, 2007 allegedly

3    executed by NTL II, as trustor, in favor of Namco, as beneficiary ("$13,000,000 Deed of Trust").

4          119.    The Kohan Parties are informed and believe and thereon allege that the

5    $13,000,000 Note was fraudulent and that NTL II never received any consideration for executing

6    the $13,000,000 Note or $13,000,000 Deed of Trust. The Kohan Parties are informed and believe

7    and thereon allege that Namco never funded the $13,000,000 Note.

8          120.    On or about December 5, 2007, Ezri Namvar, for himself and on behalf of the

9    Namvar Family and/or the Namvar Entities, including Namco, caused NTL to make and execute

10   in favor of Namco a promissory note in the principal amount of $27,000,000 ("$27,000,000

11   Note") to evidence an alleged loan in that amount made by Namco to NTL. The $27,000,000

12   Note is allegedly secured by a deed of trust on the Club Rio Property dated November 21, 2007

13   allegedly executed by NTL, as trustor, in favor of Namco, as beneficiary ("$27,000,000 Deed of

14   Trust").

15         121.    The Kohan Parties are informed and believe and thereon allege that the

16   $27,000,000 Note was fraudulent and that NTL never received any consideration for executing the

17   $27,000,000 Note or $27,000,000 Deed of Trust. The Kohan Parties are informed and believe and

18   thereon allege that Namco never funded the $27,000,000 Note. (The $6,000,000 Note, the

19   $13,000,000 Note and the $27,000,000 Note are collectively referred to herein as the "Fraudulent

20   Notes." The $6,000,000 Deed of Trust, the $13,000,000 Deed of Trust and the $27,000,000 Deed

21   of Trust are collectively referred to herein as the "Fraudulent Deeds of Trust.")

22         122.    On or about March 18, 2008, Ezri Namvar, for himself and on behalf of the

23   Namvar Family and/or the Namvar Entities, including Namco, collaterally assigned the Fraudulent

24   Notes and Fraudulent Deeds of Trust totaling more than $40,000,000 to Roya Boucherian to

25   secure an alleged indebtedness from Namco to Roya Boucherian in the principal amount of

26   $9,500,000.

27         123.    The Kohan Parties are informed and believe and thereon allege that the Fraudulent

28   Notes and Fraudulent Deeds of Trust were part of a "credit enhancement" scheme implemented by

1 | Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities,

2 | including Namco, to artificially encumber properties in which the Kohan Parties had or were to

3 | have had an interest and that the Fraudulent Notes and Fraudulent Deeds of Trust were collaterally

4 | assigned to Boucherian with knowledge that the Kohan Parties intended to file suit against them,

5 | after drafts of the complaint had been received, and after a tolling agreement had been executed.

6 |

7 | The Avondale Property

8 | 124. At the end of 2005, Kohan and Ezri Namvar, for himself and on behalf of the

9 | Namvar Family and/or the Namvar Entities, including Namco, entered into a joint venture

10 | ("Avondale joint venture") to own, develop and/or sell certain real property located in Avondale,

11 | Arizona, legally described as:

12 | The West half of the Southeast quarter of Section 1, Township 1

13 | North, Range 1 West of the Gila and Salt River Base and Meridian

14 | (the "Avondale Property").

15 | 125. Specifically, on approximately December 27, 2005, Avonnam and Tricommerce

16 | purchased an undivided 65% interest in the Avondale Property, and Seven Investment purchased

17 | an undivided 35% interest in the Avondale Property.

18 | 126. At that time and through March 2006, Kohan was the sole equity member and

19 | manager of Seven.

20 | 127. The Kohan Parties are informed and believe and thereon allege that at all relevant

21 | times, Avonnam was owned and controlled by Tricommerce, the Namvar Family and/or the

22 | Namvar Entities.

23 | 128. The Kohan Parties are informed and believe and thereon allege that all relevant

24 | times, Lancam was owned and controlled by Ezri Namvar, the Namvar Family and/or the Namvar

25 | Entities.

26 | 129. After the Avondale Property was purchased, Ezri Namvar, Hooshang Namvar, and

27 | Mousa Namvar, for themselves and on behalf of the Namvar Family and/or the Namvar Entities,

28 |

1 | including Namco, requested that Kohan transfer his membership interest in Seven Investment to
2 | Lancam for 12 months.

3 |     130.   Ezri Namvar, Hooshang Namvar, and Mousa Namvar, acting for themselves and on
4 | behalf of the Namvar Family and/or the Namvar Entities, including Namco, represented to Kohan
5 | and others that Kohan would remain the sole manager of Seven Investment and Avonnam, and
6 | that in 12 months Lancam would transfer all membership interests in Seven Investment back to
7 | Kohan free and clear of any right, title, claim, interest, or lien whatsoever of any person or entity
8 | (the "Avondale Representations").

9 |     131.   On approximately March 31, 2006 Ezri Namvar, for himself and on behalf of the
10 | Namvar Family and/or the Namvar Entities, including Namco, executed a written agreement with
11 | Kohan memorializing the Avondale Representations.

12 |     132.   In reliance on the Avondale Representations, Kohan agreed to assign his
13 | membership interest in Seven Investment to Lancam. He did so trusting that his interest would be
14 | transferred back in 12 months. Kohan remained the manager of Seven Investment.

15 |     133.   Subsequent to assigning his membership interest in Seven Investments to Namvar
16 | Family and/or Namvar Entities, Namco Family and/or Namvar Entities failed/or refused to
17 | refinance the property, failed and/or refused to make payment on the notes, and failed and/or
18 | refused to re-convey the property back to the Kohan Parties.

19 |     134.   As a result thereof, the Avondale Property was lost through foreclosure, while
20 | Namvar Family and/or Namvar Entities made no efforts to prevent the foreclosure.

21 |
22 |     The Colton and Coachella Properties

23 |     135.   On approximately September 10, 2004, B2B and U.S. Bank entered into an
24 | agreement and joint escrow instructions ("Colton Purchase Agreement") for B2B's purchase of
25 | certain real property from U.S. Bank. The property is located at 1175 South Mount Vernon,
26 | Colton, California ("Colton Property"). The Colton Property was purchased for approximately
27 | $4.5 million.

28 |

136.   In approximately October 2004, Kohan and Ezri Namvar, acting for himself and for the Namvar Family and/or the Namvar Entities, including Namco, negotiated a transaction by which B2B agreed to assign all of its rights under the Colton purchase agreement ("Colton Assignment") to a new entity to be owned and controlled: (a) 20% by Kohan, or an entity owned and controlled by Kohan; and (b) 80% by Ezri Namvar, the Namvar Family and/or the Namvar Entities. Kohan would be the sole manager of the entity.

137.   Ezri Namvar and Hooshang Namvar, acting for themselves and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, represented to Kohan among other representations that in exchange for the Colton assignment:

(a)   Kohan, or an entity owned or controlled by Kohan, would receive a 20% ownership interest in the entity obtaining the Colton assignment and the right to purchase the Colton Property;

(b)   Kohan would be the sole manager of the entity;

(c)   the Colton Property would be purchased from US Bank and as needed timely financed and refinanced under the most competitive terms and conditions then achievable, but no greater than market terms and conditions;

(d)   interest and other charges on any indebtedness incurred in connection with the Colton Property would be minimized;

(e)   Ezri Namvar, the Namvar Family and the Namvar Entities would not engage in any conduct that increased interest, management fees, or other project costs or fees incurred or claimed with respect to the Colton Property; and

(f)   the Colton Property would be timely sold, and in the meantime, the Kohan Parties would be entitled to participate in all decisions respecting the property, including whether to finance, refinance, or otherwise encumber it (collectively, "Colton Representations").

138.   In reliance on the Colton Representations, Kohan executed the Colton assignment and caused B2B to assign its rights under the Colton purchase agreement to 1175 SMV in expectation that the Colton Representations were true and correct.

1      139.    On or about October 22, 2004, 1175 SMV as buyer closed escrow under the Colton

2  purchase agreement and acquired the Colton Property.

3      140.    In or about October 2004, Coach 20, LLC purchased a K-Mart located in the City

4  of Coachella, California ("Coachella Property"). The Coachella Property was purchased for

5  approximately $1.9 million. The Colton Property and Coachella Property were purchased as a

6  portfolio of properties.

7      141.    The Kohan Parties were to have a 20% ownership interest in the Coachella

8  Property as well as in the Colton Property as alleged above.

9      142.    In or about May 2005, the Coachella Property was sold for approximately $8.4

10  million, resulting in a profit of nearly $2 million on the portfolio of properties and ownership of

11  the Colton Property fee and clear of encumbrances.

12      143.    Between 2004 and 2007, the Colton Property was assigned to various entities, and

13  ultimately to a Namvar Entity.

14      144.    In another instance of the "credit enhancement" scheme alleged above, without the

15  knowledge of the Kohan Parties, Ezri Namvar, acting for himself and on behalf of the Namvar

16  Family and/or the Namvar Entities, including Namco, placed a $2.7 million lien on the Colton

17  Property in favor of Security Pacific Bank and/or Security Pacific Financial.

18      145.    Ezri Namvar, acting for himself and on behalf of the Namvar Family and/or the

19  Namvar Entities, including Namco, Security Pacific Bank and/or Security Pacific Financial

20  pledged the $2.7 million note as part of a bundle of notes to secure a $30 million loan from Center

21  Bank.

22      146.    Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar

23  Entities, including Namco, failed and/or refused to make payments on the notes to Center Bank.

24      147.    As a result thereof, the Colton Property was lost through foreclosure.

25      148.    Two weeks after the foreclosure on the Colton Property, it was repurchased by

26  friends and/or family of Ezri Namvar at a substantially reduced price.

27  /////

28  /////

24

ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

## FIRST CLAIM FOR RELIEF

(For Fraud)

149.    The Kohan Parties and incorporate herein by reference each and every allegation set forth in Paragraphs 79 through 148, inclusive, of this Counterclaim as though fully set forth herein.

150.    The Club Rio Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were false.

151.    At the time the Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were made, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, knew them to be false.

152.    The Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were made with the intent to induce the Kohan Parties to act as alleged herein.

153.    The Kohan Parties acted as alleged herein in reliance on the representations made by Ezri Namvar for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco.

154.    At the time the Kohan Parties acted as alleged herein, they were ignorant of the falsity of the representations and could not, in the exercise of reasonable diligence, have discovery their falsity.

155.    After the representations were made to the Kohan Parties, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, caused the Fraudulent Notes and Fraudulent Deeds of Trust to be made and executed.

156.    The Fraudulent Notes and Fraudulent Deeds of Trust were then collaterally assigned the Fraudulent Notes and Fraudulent Deeds of Trust totaling more than $40,000,000 to Roya Boucherian to secure an alleged indebtedness from Namco to Roya Boucherian in the principal amount of $9,500,000.

25

ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

1    157.    As proximate results of the Kohan Parties' reliance on the false representations and

2    the wrongful encumbrances being placed on the properties resulting in the properties being lost

3    through foreclosure, or otherwise, the Kohan Parties have been damaged in an amount to be proven at

4    trial.

5    158.    Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar

6    Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and

7    legal rights or otherwise cause injury.  Such conduct was despicable conduct that subjected the Kohan

8    Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary

9    or punitive damages.

10

11    ## SECOND CLAIM FOR RELIEF

12    (For Fraud)

13    159.    The Kohan Parties reallege and incorporate herein by reference each and every

14    allegation set forth in Paragraphs 79 through 148, inclusive, of this Counterclaim as though fully

15    set forth herein.

16    160.    The Club Rio Representations, the Wilde Representations, the Woodman

17    Representations, the Avondale Representations and the Colton Representations were false.

18    161.    At the time the Club Rio Representations, the Wilde Representations, the

19    Woodman Representations, the Avondale Representations and the Colton Representations were

20    made, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities,

21    including Namco, had no reasonable basis to believe the representations were true.

22    162.    The Club Rio Representations, the Wilde Representations, the Woodman

23    Representations, the Avondale Representations and the Colton Representations were made with the

24    intent to induce the Kohan Parties to act as alleged herein.

25    163.    The Kohan Parties acted as alleged herein in reliance on the representations made

26    by Ezri Namvar for himself and on behalf of the Namvar Family and/or the Namvar Entities,

27    including Namco.

28

1    164.    At the time the Kohan Parties acted as alleged herein, they were ignorant of the

2    falsity of the representations and could not, in the exercise of reasonable diligence, have discovery

3    their falsity.

4    165.    As proximate results of the Kohan Parties' reliance on the false representations and

5    the wrongful encumbrances being placed on the properties resulting in the properties being lost

6    through foreclosure, or otherwise, the Kohan Parties have been damaged in an amount to be proven at

7    trial.

8    166.    Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar

9    Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and

10    legal rights or otherwise cause injury. Such conduct was despicable conduct that subjected the Kohan

11    Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary

12    or punitive damages.

13

14                                  **THIRD CLAIM FOR RELIEF**

15                                          (For Fraud)

16    167.    The Kohan Parties reallege and incorporate herein by reference each and every

17    allegation set forth in Paragraphs 79 through 148, inclusive, of this Counterclaim as though fully

18    set forth herein.

19    168.    The Club Rio Representations, the Wilde Representations, the Woodman

20    Representations, the Avondale Representations and the Colton Representations were false.

21    169.    At the time the Club Rio Representations, the Wilde Representations, the

22    Woodman Representations, the Avondale Representations and the Colton Representations were

23    made, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities,

24    including Namco, had no intent to perform on such representations.

25    170.    The Club Rio Representations, the Wilde Representations, the Woodman

26    Representations, the Avondale Representations and the Colton Representations were made with the

27    intent to induce the Kohan Parties to act as alleged herein.

28

ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

171.    The Kohan Parties acted as alleged herein in reliance on the representations made by Ezri Namvar for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco.

172.    At the time the Kohan Parties acted as alleged herein, they were ignorant of the absence of any intent to perform, and could not, in the exercise of reasonable diligence, have discovered the absence of intent to perform.

173.    As proximate results of the Kohan Parties' reliance on the false representations and the wrongful encumbrances being placed on the properties resulting in the properties being lost through foreclosure, or otherwise, the Kohan Parties have been damaged in an amount to be proven at trial.

174.    Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and legal rights or otherwise cause injury.  Such conduct was despicable conduct that subjected the Kohan Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary or punitive damages.

## FOURTH CLAIM FOR RELIEF

### (For Fraud)

175.    The Kohan Parties reallege and incorporate herein by reference each and every allegation set forth in Paragraphs 79 through 148, inclusive, of this Counterclaim as though fully set forth herein.

176.    Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, the Namvar Family and the Namvar Entities, concealed material facts from the Kohan Parties.

177.    The material facts were concealed from the Kohan Parties with the intent to induce the Kohan Parties to act as alleged herein.

178. The Kohan Parties acted as alleged herein in reliance on the representations made by Ezri Namvar for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco.

179. At the time the Kohan Parties acted as alleged herein, they were ignorant of the concealed facts, and could not, in the exercise of reasonable diligence, have discovery the concealed facts.

180. As proximate results of the Kohan Parties' reliance and the wrongful encumbrances being placed on the properties resulting in the properties being lost through foreclosure, or otherwise, the Kohan Parties have been damaged in an amount to be proven at trial.

181. Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and legal rights or otherwise cause injury. Such conduct was despicable conduct that subjected the Kohan Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary or punitive damages.

### FIFTH CLAIM FOR RELIEF

(For Breach of Contract)

182. The Kohan Parties reallege and incorporate herein by reference each and every allegation set forth in Paragraphs 79 through 148, inclusive, of this Counterclaim as though fully set forth herein.

183. The Kohan Parties duly performed all promises, conditions, and agreements required of them.

184. Namco has breached the contracts alleged herein by failing and/or refusing to perform the Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations, by wrongfully encumbering the properties and allowing said properties to be lost through foreclosure.

185. As proximate results of Namco's breach, the Kohan Parties have been damaged in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

(For Conversion)

186.    The Kohan Parties reallege and incorporate herein by reference each and every allegation set forth in Paragraphs 76 through 144, inclusive, of this Counterclaim as though fully set forth herein.

187.    Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, has converted the property of the Kohan Parties as alleged herein.

188.    As proximate results of the conversion, the Kohan Parties have been damaged in an amount to be proven at trial.

189.    Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and legal rights or otherwise cause injury. Such conduct was despicable conduct that subjected the Kohan Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary or punitive damages.

WHEREFORE, The Kohan Parties pray for relief as follows:

1.    For general and special damages in an amount according to proof;

2.    For pre-judgment interest;

3.    For punitive and exemplary damages in an amount according to proof;

4.    For a setoff on Plaintiff's claims;

5.    For a determination that the damages alleged herein are non-dischargeable.

6.    For attorneys' fees and costs of suit herein;

7.    For such other relief as the court finds just and proper.

/////
/////
/////
/////

DATED: October 12, 2010

**LAW OFFICES OF GEORGE H. KIM**
GEORGE H. KIM

GEORGE H. KIM, Attorneys For Defendants/
Counterclaimants THEODORE KOHAN and
BUSINESS TO BUSINESS MARKETS, INC.

## DEMAND FOR JURY TRIAL

Defendants hereby demand a jury trial on all of the above stated counterclaims.

DATED: October 12, 2010

**LAW OFFICES OF GEORGE H. KIM**
GEORGE H. KIM

GEORGE H. KIM, Attorneys For Defendants/
Counterclaimants THEODORE KOHAN and
BUSINESS TO BUSINESS MARKETS, INC.

ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

| In re: | | CHAPTER 11 |
|---|---|---|
| NAMCO CAPITAL GROUP, INC. | Debtor(s). | CASE NUMBER: 2:08-bk-32333-BR |
| BRADLEY D. SHARP v. THEODORE KOHAN, ET AL. | | CASE NUMBER: 2:10-ap-02489 -BR |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9800 Wilshire Boulevard, Suite 150, Beverly Hills, California 90212-1804.

A true and correct copy of the foregoing document described ANSWER AND COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC. will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 12, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

See Attached

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On October 12, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

See Attached

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____, I   served   the   following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 12, 2010 | George H. Kim | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

| In re:<br><br>NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 2:08-bk-32333-BR |
|---|---|
| BRADLEY D. SHARP v. THEODORE KOHAN, ET AL. | CASE NUMBER: 2:10-ap-02489 -BR |

## ADDITIONAL SERVICE INFORMATION

### I. TO BE SERVED BY NEF

- Richard Burstein    rburstein@ebg-law.com, ecf@ebg-law.com
- George H Kim    george@gkimlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

### II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL

Honorable Barry Russell
UNITED STATES BANKRUPTCY COURT
Roybal Federal Building
225 East Temple Street, Suite 1660
Los Angeles, CA 90012

### III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR E-MAIL

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                    F 9013-3.1