1  GEORGE H. KIM (SBN 162767)
2  **LAW OFFICES OF GEORGE H. KIM**
   9800 Wilshire Boulevard, Suite 150
3  Beverly Hills, California 90212-1804
   Telephone (310) 746-4099
4  Facsimile (310) 861-0525
   Email: george@gkimlaw.com
5

6  Attorneys for: Defendants Theodore Kohan and Business to Business Markets, Inc.
7

8  **UNITED STATES BANKRUPTCY COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10 **LOS ANGELES DIVISION**
11

| | |
|---|---|
| 12  In re: | ) Case No.  2:08-bk-32333-BR |
| 13 | ) |
|     NAMCO CAPITAL GROUP, INC. | ) Chapter 11 |
| 14  A California Corporation; | ) |
| 15 | ) |
|     Debtor. | ) |
| 16 | ) |
|     | ) Adversary Case No. 2:10-ap-02489-BR |
| 17  BRADLEY D. SHARP, Chapter 11 Trustee, | ) |
| 18 | ) **FIRST AMENDED COUNTERCLAIMS OF** |
|     Plaintiff, | ) **DEFENDANTS THEODORE KOHAN AND** |
| 19 | ) **BUSINESS TO BUSINESS MARKETS, INC.** |
|     v. | ) |
| 20 | ) |
| 21  THEODORE KOHAN, an individual, and | ) Status Conference: |
|     BUSINESS TO BUSINESS MARKETS, | )     Date:  11/23/10 |
| 22  INC., A California Corporation, | )     Time:  10:00 AM |
| 23 | )     Place: U.S. Bankruptcy Court |
|     Defendants. | )             Courtroom 1668 |
| 24 | )             255 E. Temple Street |
|     | )             Los Angeles, CA 90012 |
| 25  THEODORE KOHAN, an individual, and | ) |
|     BUSINESS TO BUSINESS MARKETS, INC., | ) |
| 26  A California Corporation, | ) |
| 27 | ) |
|     Counterclaimants, | ) |
| 28 | ) |

1

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

v.                                          )
                                            )
NAMCO CAPITAL GROUP, INC., A                )
California Corporation; and BRADLEY D.      )
SHARP, Chapter 11 Trustee,                  )
                                            )
          Counterdefendants.                )
                                            )

## COUNTERCLAIMS

Counterclaimants Theodore Kohan and Business to Business Markets allege, as counterclaims, as follows:

1.      The counterclaims alleged herein are non-core proceedings. The Kohan Parties do not consent to entry of final orders or judgment on said counterclaims by the bankruptcy judge.

The Parties

2.      Counter-claimant Business to Business Markets, Inc. ("B2B") is at all times relevant hereto a California corporation with its principal place of business in Los Angeles, California.

3.      Counter-claimant Theodore Kohan ("Kohan") is an individual residing in the State of California, County of Los Angeles. (B2B and Kohan are collectively referred to herein as the "Kohan Parties.").

4.      The Kohan Parties are informed and believe and thereon allege that Debtor Namco Capital Group, Inc. ("Namco") is at all times relevant hereto a California corporation with its principal place of business in Los Angeles, California.

5.      On or about December 22, 2008, an involuntary Chapter 11 bankruptcy petition was filed against Namco in the United States Bankruptcy Court for the Central District of California, case no. 08-32333-BR.

6.      On or about May 8, 2009, Counter-defendant Bradley D. Sharp ("Trustee") was appointed the Chapter 11 Trustee for the Estate of Namco. Trustee is sued herein solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Namco.

Other Persons and Entities

Ezri Namvar

7.    The Kohan Parties are informed and believe and thereon allege that as of the date the involuntary bankruptcy petition was filed against Namco, Ezri Namvar was the President, Chief Financial Officer, sole director and sole shareholder of Namco.

8.    On or about December 22, 2008, an involuntary Chapter 11 bankruptcy petition was filed against Ezri Namvar in the United States Bankruptcy Court for the Central District of California, case no. 2:08-bk-32349-BR.

The Namvar Family

9.    The Kohan Parties are informed and believe and thereon allege that Mousa Namvar, Ramin Namvar, Hooshang (Sean) Namvar and Homayoun (Tony) Namvar are the brothers of Ezri Namvar.

10.    The Kohan Parties are informed and believe and thereon allege that Lida Shraga, Hilda Bayanfar and Helen Shadi are the sisters of Ezri Namvar.

11.    The Kohan Parties are informed and believe and thereon allege that Benjamin Namvar, Daniel Namvar, Malka Namvar and Shirah Namvar are the children of Ezri Namvar. (Ezri Namvar's brothers, sisters and children are collectively referred to herein as the "Namvar Family.")

The Namvar Family Controlled Entities

12.    The Kohan Parties are informed and believe and thereon allege that between 2002 and 2008, Namco engaged in $5.9 billion in cash and non-cash transactions filtered and disbursed through nearly 400 limited liability companies ("LLCs") owned either in whole or in part by Ezri Namvar and/or members of the Namvar Family. In the majority of these LLC investments, Ezri Namvar and/or the Namvar Family put up little or no capital to secure their interests and rarely assumed personal liability for debts associated with the LLC. Namco would advance funds to acquire property for the LLC, and ownership would be allocated to Ezri Namvar and/or the Namvar Family.

13.     The Kohan Parties are informed and believe and thereon allege that the LLCs owned, either in whole or in part, by Ezri Namvar and/or the Namvar Family relevant to their counterclaims include:

        a.     Namco Capital Group, Inc. ("Namco");

        b.     Namwest LLC ("Namwest");

        c.     Beshmada LLC ("Beshmada");

        d.     Woodman Partners LLC ("Woodman");

        e.     Namwest Town Lakes LLC ("NTL");

        f.     Namwest Town Lakes II, LLC ("NTL II");

        g.     Avonnam LLC ("Avonam");

        h.     Lancam Properties LLC ("Lancam");

        i.     Seven Investment Holdings LLC ("Seven")

        j.     Tricommerce LLC ("Tricommerce");

        k.     1175 SMV LLC ("1175 SMV")

        l.     MV 14 LLC ("MV 14");

        m.     Coach 20 LLC ("Coach 20");

        n.     Security Pacific Bank; and

        o.     Security Pacific Financial.

(Namco, Namwest, Beshmada, Woodman, NTL, NTL II, Avonam, Lancam, Seven, Tricommerce 1175 SMV, MV 14, Coach 20, Security Pacific Bank and Security Pacific Financial are collectively referred to herein as the "Namvar Entities.")

14.     On or about October 9, 2008, Namwest, LLC filed for bankruptcy protection in the United States Bankruptcy Court for the District of Arizona, case number 2:08-bk-13935-CGC.

15.     On or about October 10, 2008, NTL II filed for bankruptcy protection in the United States Bankruptcy Court for the District of Arizona, case number 2:08-bk-14027-CGC.

16.     On or about June 19, 2009, an involuntary bankruptcy petition was filed against Beshmada LLC in the United States Bankruptcy Court for the Central District of California, case number 2:09-bk-25523-BR.

1    17.    On or about May 12, 2010, the NTL II bankruptcy was dismissed.

2    18.    The Kohan Parties are informed and believe and thereon allege that at all relevant

3  times, Ezri Namvar was the principal, agent, servant, employee, and/or alter ego of the Namvar

4  Family and the Namvar Entities, including Namco, and each of them, and that in engaging in the

5  conduct alleged herein, was acting within the course an scope of said relationship, and that each

6  member of the Namvar Family and the Namvar Entities, including Namco, and each of them,

7  authorized or ratified the conduct alleged herein.

8

9                                    COMMON ALLEGATIONS

10  The Club Rio Property

11    19.    On approximately August 5, 2004, Triyar Capital, LLC, as buyer, and The

12  Graduate Restaurants, Inc., as seller, entered into an agreement ("Club Rio Option Agreement")

13  whereby Triyar obtained the right to purchase approximately 9.94 acres of real property in Tempe,

14  Arizona legally described as:

15        Parcel No. 1:

16            The East 300 feet of the South 440 feet of the North 880 feet of the

17            West 495 feet of the Northeast quarter of the Northeast quarter of
             Section 15, Township 1 North, Range 4 East of the Gila and Salt

18            River Base and Meridian, Maricopa County, Arizona.

19        Parcel No. 2:

20            The South 134.96 feet of the North 1134.96 feet of the East 763.05

21            feet of the West 1258.05 feet of the Northeast quarter of the
             Northeast quarter of Section 15, Township 1 North, Range 4 East of

22            the Gila and Salt River Base and Meridian, Maricopa County,
             Arizona.

23

24        Parcel No. 3:

25            The South 200 feet of the North 1000 feet of the Northeast quarter

26            of the Northeast quarter of Section 15, Township 1 North, Range 4
             East of the Gila and Salt River Base and Meridian, Maricopa

27            County, Arizona;

28            EXCEPT the West 495 feet thereof; and

EXCEPT the West 5 feet of the East 55 feet of the South 200 feet of the North 1000 feet of the Northeast quarter of the Northeast quarter of Section 15, Township 1 North, Range 4 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona; and

EXCEPT the West 10 feet of the East 65 feet of the South 65 feet of the South 200 feet of the North 1000 feet of the said Northeast quarter of Section 15.

Parcel No. 4:

The South 200 feet of the North 600 feet of the Northeast quarter of the Northeast quarter of Section 15, Township 1 North, Range 4 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona;

EXCEPT the East 568 feet thereof; and also

EXCEPT the WEST 495 feet thereof.

(Parcel Nos. 1, 2, 3 and 4 are collectively referred to as the "Club Rio Property").

20.    On approximately October 4, 2004, Triyar assigned its rights under the Club Rio Option Agreement to B2B.

21.    Between October 2004 and December 2004, Kohan and Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, engaged in negotiations the end result of which would be that Kohan would assign B2B's rights under the Club Rio Option Agreement to a new entity to be formed.

22.    In the course of these negotiations with Kohan, among other representations, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, represented to Kohan that:

(a)    Kohan, or an entity owned or controlled by Kohan, would receive a 27% ownership interest in the newly formed entity that would acquire B2B's rights under the Club Rio Option Agreement;

(b)    Kohan, or an entity owned or controlled by Kohan, would receive a 27%
ownership interest in any other entity organized, owned or controlled by Ezri Namvar, the
Namvar Family and/or the Namvar Entities that acquired real property in the vicinity of the
Club Rio Property;

(c)    Kohan would be one of no more than two managers of the newly formed
entity or entities;

(d)    Namwest, James Henrie, and/or Michael McBride had the expertise,
experience, and financial capability to entitle, develop, finance, and construct mixed-use
residential and commercial or other complex projects on the Club Rio Property and any
other neighboring property subsequently acquired;

(e)    the titleholder of record would timely finance and refinance the Club Rio
Property and any other neighboring property subsequently acquired under the most
competitive terms and conditions then achievable;

(f)    the titleholder of record would timely entitle, develop and sell the Club Rio
Property and any other neighboring property subsequently acquired;

(g)    interest and other charges on any indebtedness incurred in connection with
the acquisition, entitlement, development, and sale of the Club Rio Property and other
project properties would be minimized at or below market rates; and

(h)    Ezri Namvar and any entity owned or controlled by Ezri Namvar, the
Namvar Family and/or the Namvar Entities would not engage in any conduct that
increased the interest, management fees, or other project costs incurred or claimed by Ezri
Namvar, the Namvar Family and/or the Namvar Entities with respect to the Club Rio
Property and any other property acquired (collectively, "Club Rio Representations").

23.    On or about December 8, 2004, consistent with the Club Rio Representations,
Articles of Organization for NTL were filed. The original members of NTL were Namwest, LLC
and Arizona Tempe Town Lakes, LLC ("ATTL"), an entity owned and controlled by Kohan.

24.    In reliance on the Club Rio Representations, in December 2004, Kohan entered into
an agreement with Ezri Namvar, for himself and on behalf of the Namvar Family and/or the

7

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

Namvar Entities, including Namco, whereby Kohan agreed to assign B2B's rights under the Club Rio Option Agreement to a new entity to be created for the purpose of purchasing the Club Rio Property.

25.    On or about December 21, 2004, in reliance on the Club Rio Representations, Kohan caused B2B to assign its rights under the Club Rio Option Agreement to NTL.  In exchange, pursuant to the Club Rio Representations, Kohan, or an entity controlled by Kohan, was to own and control 27% of the newly formed entity, and Kohan was to be one of no more than two (2) managers of the newly formed entity.

26.    On or about December 22, 2004, after B2B has assigned its interest in the Club Rio Option Agreement to NTL, and days before escrow was to close on the Club Rio Property, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, advised Kohan that he was transferring Namwest's membership interest in NTL to Woodman, and asked that Kohan consent and transfer ATTL's interest in NTL to Woodman.

27.    In connection with his request, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, represented to Kohan that in twelve months, 27% of the membership interests in NTL, or its successor, would be transferred back to Kohan, ATTL, or another entity owned or controlled by Kohan, at Kohan's election (the "Woodman Representations").

28.    As a result of and in reliance on the Club Rio Representations and the Woodman Representations, Kohan agreed to transfer ATTL's interest in NTL to Woodman Partners, LLC. On December 22, 2004, NTL filed a first amendment to its Articles of Organization with the Arizona Corporation Commission purporting to remove Namwest and ATTL as members of NTL, and making Woodman the sole member of NTL.  The amendment also purported to change the manager of NTL to Richard Marr/Namco Capital Group, Inc.

29.    On or about December 23, 2004, NTL, as buyer, closed escrow and acquired title to the Club Rio Property.

The Wilde Property

30.     Shortly after the close of escrow on the Club Rio Property, Kohan and/or other persons acting on behalf of the Kohan Parties, located certain parcels of unimproved real property adjacent to and in the vicinity of the Club Rio Property, and began negotiations to purchase said properties at advantageous prices.

31.     On approximately May 2, 2005, NTL II was formed by filing Articles of Organization with the Arizona Corporation Commission. The Articles of Organization identify Namwest as the manager and sole member of NTL II. NTL II was formed for the purpose of purchasing these parcels adjacent to and in the vicinity of the Club Rio Property.

32.     At the request of Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, the Kohan Parties stepped aside and let Ezri Namvar and Steven M. Skarphol and/or Namwest complete the negotiations to purchase the properties adjacent to and in the vicinity of the Club Rio Property.

33.     The Kohan Parties agreed to step aside in reliance on the representations made by Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, that:

(a)     Kohan, or an entity owned or controlled by Kohan, would receive a 27% ownership interest in the newly formed entity that would acquire title to the Wilde I, II, and III Properties (defined below);

(b)     Kohan would be one of no more than two managers of the newly formed entity;

(c)     the titleholder of record would timely finance and refinance the Wilde I, II, and III Properties under the most competitive terms and conditions then achievable;

(d)     the titleholder of record would timely entitle, develop and sell the Wilde I, II, and III Properties;

(e)     interest and other charges on any indebtedness incurred in connection with the acquisition, entitlement, development, and sale of the Wilde I, II, and III Properties would be minimized at or below market rates; and

9

1     (f)  Ezri Namvar and any entity owned or controlled by Ezri Namvar, the

2 Namvar Family and/or the Namvar Entities would not engage in any conduct that

3 increased the interest, management fees, or other project costs or fees incurred or claimed

4 by Ezri Namvar, the Namvar Family and/or the Namvar Entities with respect to the Wilde

5 I, II, and III Properties (the "Wilde Representations").

6   34.  On or about August 26, 2005, NTL II purchased approximately .74 acres of real

7 property located on Scottsdale Road just north of State Route 202 in Tempe, Arizona ("Wilde I

8 Property"). The Wilde I Property is in the vicinity of the Club Rio Property.

9   35.  On or about August 29, 2005, NTL II purchased approximately 5.84 acres of real

10 property located near 59th Avenue and Elliot Road, Laveen, Arizona ("Wilde II Property").

11   36.  On or about January 31, 2006, NTL II purchased approximately 4.88 acres adjacent

12 to the Club Rio Property ("Wilde III Property"). (The Wilde I, II and III Properties are

13 collectively referred to herein as the "Wilde Property.")

14

15     Namco's Financial Collapse and the Creation of Fictitious Debt

16   37.  The Kohan Parties are informed and believe and thereon allege that as Namco's

17 financial situation deteriorated, but prior to the filing of the involuntary bankruptcy petitions

18 against Namco and Ezri Namvar, Ezri Namvar, for himself and on behalf of the Namvar Family

19 and/or the Namvar Entities, including Namco, created fictitious debt on many of the properties,

20 made numerous assignments of this debt, and numerous assignments of ownership interests in the

21 LLCs which own the properties. In many instances there are multiple assignments of the same

22 debt or ownership interests.

23   38.  On or about May 26, 2006, Ezri Namvar, for himself and on behalf of the Namvar

24 Family and/or the Namvar Entities, including Namco, caused NTL II to make and execute in favor

25 of Namco a promissory note in the principal amount of $6,000,000 ("$6,000,000 Note") to

26 evidence an alleged loan in that amount made by Namco to NTL II. The $6,000,000 Note is

27 allegedly secured by a deed of trust on the Wilde Property dated May 26, 2006 allegedly executed

28 by NTL II, as trustor, in favor of Namco, as beneficiary ("$6,000,000 Deed of Trust")

1    39.    The Kohan Parties are informed and believe and thereon allege that the $6,000,000

2    Note was fraudulent and that NTL II never received any consideration for executing the

3    $6,000,000 Note or $6,000,000 Deed of Trust. The Kohan Parties are informed and believe and

4    thereon allege that Namco never funded the $6,000,000 Note.

5    40.    On or about September 20, 2007, Ezri Namvar, for himself and on behalf of the

6    Namvar Family and/or the Namvar Entities, including Namco, caused NTL II to make and execute

7    in favor of Namco a promissory note in the principal amount of $13,000,000 ("$13,000,000

8    Note") to evidence an alleged loan made by Namco to NTL II. The $13,000,000 Note includes the

9    alleged indebtedness evidenced by the $6,000,000 Note. The $13,000,000 Note is allegedly

10    secured by an all inclusive deed of trust on the Wilde Property dated September 20, 2007 allegedly

11    executed by NTL II, as trustor, in favor of Namco, as beneficiary ("$13,000,000 Deed of Trust").

12    41.    The Kohan Parties are informed and believe and thereon allege that the

13    $13,000,000 Note was fraudulent and that NTL II never received any consideration for executing

14    the $13,000,000 Note or $13,000,000 Deed of Trust. The Kohan Parties are informed and believe

15    and thereon allege that Namco never funded the $13,000,000 Note.

16    42.    On or about December 5, 2007, Ezri Namvar, for himself and on behalf of the

17    Namvar Family and/or the Namvar Entities, including Namco, caused NTL to make and execute

18    in favor of Namco a promissory note in the principal amount of $27,000,000 ("$27,000,000

19    Note") to evidence an alleged loan in that amount made by Namco to NTL. The $27,000,000

20    Note is allegedly secured by a deed of trust on the Club Rio Property dated November 21, 2007

21    allegedly executed by NTL, as trustor, in favor of Namco, as beneficiary ("$27,000,000 Deed of

22    Trust").

23    43.    The Kohan Parties are informed and believe and thereon allege that the

24    $27,000,000 Note was fraudulent and that NTL never received any consideration for executing the

25    $27,000,000 Note or $27,000,000 Deed of Trust. The Kohan Parties are informed and believe and

26    thereon allege that Namco never funded the $27,000,000 Note. (The $6,000,000 Note, the

27    $13,000,000 Note and the $27,000,000 Note are collectively referred to herein as the "Fraudulent

28

1    Notes." The $6,000,000 Deed of Trust, the $13,000,000 Deed of Trust and the $27,000,000 Deed

2    of Trust are collectively referred to herein as the "Fraudulent Deeds of Trust.")

3        44.    On or about March 18, 2008, Ezri Namvar, for himself and on behalf of the

4    Namvar Family and/or the Namvar Entities, including Namco, collaterally assigned the Fraudulent

5    Notes and Fraudulent Deeds of Trust totaling more than $40,000,000 to Roya Boucherian to

6    secure an alleged indebtedness from Namco to Roya Boucherian in the principal amount of

7    $9,500,000.

8        45.    The Kohan Parties are informed and believe and thereon allege that the Fraudulent

9    Notes and Fraudulent Deeds of Trust were part of a "credit enhancement" scheme implemented by

10    Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities,

11    including Namco, to artificially encumber properties in which the Kohan Parties had or were to

12    have had an interest and that the Fraudulent Notes and Fraudulent Deeds of Trust were collaterally

13    assigned to Boucherian with knowledge that the Kohan Parties intended to file suit against them,

14    after drafts of the complaint had been received, and after a tolling agreement had been executed.

15

16        The Avondale Property

17        46.    At the end of 2005, Kohan and Ezri Namvar, for himself and on behalf of the

18    Namvar Family and/or the Namvar Entities, including Namco, entered into a joint venture

19    ("Avondale joint venture") to own, develop and/or sell certain real property located in Avondale,

20    Arizona, legally described as:

21            The West half of the Southeast quarter of Section 1, Township 1

22            North, Range 1 West of the Gila and Salt River Base and Meridian

23            (the "Avondale Property").

24        47.    Specifically, on approximately December 27, 2005, Avonnam and Tricommerce

25    purchased an undivided 65% interest in the Avondale Property, and Seven Investment purchased

26    an undivided 35% interest in the Avondale Property.

27        48.    At that time and through March 2006, Kohan was the sole equity member and

28    manager of Seven.

1     49.    The Kohan Parties are informed and believe and thereon allege that at all relevant

2  times, Avonnam was owned and controlled by Tricommerce, the Namvar Family and/or the

3  Namvar Entities.

4     50.    The Kohan Parties are informed and believe and thereon allege that all relevant

5  times, Lancam was owned and controlled by Ezri Namvar, the Namvar Family and/or the Namvar

6  Entities.

7     51.    After the Avondale Property was purchased, Ezri Namvar, Hooshang Namvar, and

8  Mousa Namvar, for themselves and on behalf of the Namvar Family and/or the Namvar Entities,

9  including Namco, requested that Kohan transfer his membership interest in Seven Investment to

10  Lancam for 12 months.

11     52.    Ezri Namvar, Hooshang Namvar, and Mousa Namvar, acting for themselves and on

12  behalf of the Namvar Family and/or the Namvar Entities, including Namco, represented to Kohan

13  and others that Kohan would remain the sole manager of Seven Investment and Avonnam, and

14  that in 12 months Lancam would transfer all membership interests in Seven Investment back to

15  Kohan free and clear of any right, title, claim, interest, or lien whatsoever of any person or entity

16  (the "Avondale Representations").

17     53.    On approximately March 31, 2006 Ezri Namvar, for himself and on behalf of the

18  Namvar Family and/or the Namvar Entities, including Namco, executed a written agreement with

19  Kohan memorializing the Avondale Representations.

20     54.    In reliance on the Avondale Representations, Kohan agreed to assign his

21  membership interest in Seven Investment to Lancam. He did so trusting that his interest would be

22  transferred back in 12 months. Kohan remained the manager of Seven Investment.

23     55.    Subsequent to assigning his membership interest in Seven Investments to Namvar

24  Family and/or Namvar Entities, Namco Family and/or Namvar Entities failed/or refused to

25  refinance the property, failed and/or refused to make payment on the notes, and failed and/or

26  refused to re-convey the property back to the Kohan Parties.

27     56.    As a result thereof, the Avondale Property was lost through foreclosure, while

28  Namvar Family and/or Namvar Entities made no efforts to prevent the foreclosure.

13

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

The Colton and Coachella Properties

57.    On approximately September 10, 2004, B2B and U.S. Bank entered into an agreement and joint escrow instructions ("Colton Purchase Agreement") for B2B's purchase of certain real property from U.S. Bank. The property is located at 1175 South Mount Vernon, Colton, California ("Colton Property"). The Colton Property was purchased for approximately $4.5 million.

58.    In approximately October 2004, Kohan and Ezri Namvar, acting for himself and for the Namvar Family and/or the Namvar Entities, including Namco, negotiated a transaction by which B2B agreed to assign all of its rights under the Colton purchase agreement ("Colton Assignment") to a new entity to be owned and controlled: (a) 20% by Kohan, or an entity owned and controlled by Kohan; and (b) 80% by Ezri Namvar, the Namvar Family and/or the Namvar Entities.  Kohan would be the sole manager of the entity.

59.    Ezri Namvar and Hooshang Namvar, acting for themselves and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, represented to Kohan among other representations that in exchange for the Colton assignment:

(a)    Kohan, or an entity owned or controlled by Kohan, would receive a 20% ownership interest in the entity obtaining the Colton assignment and the right to purchase the Colton Property;

(b)    Kohan would be the sole manager of the entity;

(c)    the Colton Property would be purchased from US Bank and as needed timely financed and refinanced under the most competitive terms and conditions then achievable, but no greater than market terms and conditions;

(d)    interest and other charges on any indebtedness incurred in connection with the Colton Property would be minimized;

(e)    Ezri Namvar, the Namvar Family and the Namvar Entities would not engage in any conduct that increased interest, management fees, or other project costs or fees incurred or claimed with respect to the Colton Property; and

(f)     the Colton Property would be timely sold, and in the meantime, the Kohan Parties would be entitled to participate in all decisions respecting the property, including whether to finance, refinance, or otherwise encumber it (collectively, "Colton Representations").

60.     In reliance on the Colton Representations, Kohan executed the Colton assignment and caused B2B to assign its rights under the Colton purchase agreement to 1175 SMV in expectation that the Colton Representations were true and correct.

61.     On or about October 22, 2004, 1175 SMV as buyer closed escrow under the Colton purchase agreement and acquired the Colton Property.

62.     In or about October 2004, Coach 20, LLC purchased a K-Mart located in the City of Coachella, California ("Coachella Property"). The Coachella Property was purchased for approximately $1.9 million. The Colton Property and Coachella Property were purchased as a portfolio of properties.

63.     The Kohan Parties were to have a 20% ownership interest in the Coachella Property as well as in the Colton Property as alleged above.

64.     In or about May 2005, the Coachella Property was sold for approximately $8.4 million, resulting in a profit of nearly $2 million on the portfolio of properties and ownership of the Colton Property fee and clear of encumbrances.

65.     Between 2004 and 2007, the Colton Property was assigned to various entities, and ultimately to a Namvar Entity.

66.     In another instance of the "credit enhancement" scheme alleged above, without the knowledge of the Kohan Parties, Ezri Namvar, acting for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, placed a $2.7 million lien on the Colton Property in favor of Security Pacific Bank and/or Security Pacific Financial.

67.     Ezri Namvar, acting for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, Security Pacific Bank and/or Security Pacific Financial pledged the $2.7 million note as part of a bundle of notes to secure a $30 million loan from Center Bank.

15

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC.

68.  Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, failed and/or refused to make payments on the notes to Center Bank.

69.  As a result thereof, the Colton Property was lost through foreclosure.

70.  Two weeks after the foreclosure on the Colton Property, it was repurchased by friends and/or family of Ezri Namvar at a substantially reduced price.

## FIRST CLAIM FOR RELIEF

### (For Fraud)

71.  The Kohan Parties and incorporate herein by reference each and every allegation set forth in Paragraphs 1 through 70, inclusive, of this Counterclaim as though fully set forth herein.

72.  The Club Rio Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were false.

73.  At the time the Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were made, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, knew them to be false.

74.  The Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were made with the intent to induce the Kohan Parties to act as alleged herein.

75.  The Kohan Parties acted as alleged herein in reliance on the representations made by Ezri Namvar for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco.

76.  At the time the Kohan Parties acted as alleged herein, they were ignorant of the falsity of the representations and could not, in the exercise of reasonable diligence, have discovery their falsity.

1    77.    After the representations were made to the Kohan Parties, Ezri Namvar, for himself

2    and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, caused the

3    Fraudulent Notes and Fraudulent Deeds of Trust to be made and executed.

4    78.    The Fraudulent Notes and Fraudulent Deeds of Trust were then collaterally

5    assigned the Fraudulent Notes and Fraudulent Deeds of Trust totaling more than $40,000,000 to

6    Roya Boucherian to secure an alleged indebtedness from Namco to Roya Boucherian in the

7    principal amount of $9,500,000.

8    79.    As proximate results of the Kohan Parties' reliance on the false representations and

9    the wrongful encumbrances being placed on the properties resulting in the properties being lost

10   through foreclosure, or otherwise, the Kohan Parties have been damaged in an amount to be proven at

11   trial.

12   80.    Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar

13   Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and

14   legal rights or otherwise cause injury.  Such conduct was despicable conduct that subjected the Kohan

15   Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary

16   or punitive damages.

17

18                      **SECOND CLAIM FOR RELIEF**

19                            (For Fraud)

20   81.    The Kohan Parties reallege and incorporate herein by reference each and every

21   allegation set forth in Paragraphs 1 through 70, inclusive, of this Counterclaim as though fully set

22   forth herein.

23   82.    The Club Rio Representations, the Wilde Representations, the Woodman

24   Representations, the Avondale Representations and the Colton Representations were false.

25   83.    At the time the Club Rio Representations, the Wilde Representations, the

26   Woodman Representations, the Avondale Representations and the Colton Representations were

27   made, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities,

28   including Namco, had no reasonable basis to believe the representations were true.

84.    The Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were made with the intent to induce the Kohan Parties to act as alleged herein.

85.    The Kohan Parties acted as alleged herein in reliance on the representations made by Ezri Namvar for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco.

86.    At the time the Kohan Parties acted as alleged herein, they were ignorant of the falsity of the representations and could not, in the exercise of reasonable diligence, have discovery their falsity.

87.    As proximate results of the Kohan Parties' reliance on the false representations and the wrongful encumbrances being placed on the properties resulting in the properties being lost through foreclosure, or otherwise, the Kohan Parties have been damaged in an amount to be proven at trial.

88.    Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and legal rights or otherwise cause injury. Such conduct was despicable conduct that subjected the Kohan Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary or punitive damages.

## THIRD CLAIM FOR RELIEF

### (For Fraud)

89.    The Kohan Parties reallege and incorporate herein by reference each and every allegation set forth in Paragraphs 1 through 70, inclusive, of this Counterclaim as though fully set forth herein.

90.    The Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were false.

91.    At the time the Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations were

1   made, Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities,

2   including Namco, had no intent to perform on such representations.

3        92.    The Club Rio Representations, the Wilde Representations, the Woodman

4   Representations, the Avondale Representations and the Colton Representations were made with the

5   intent to induce the Kohan Parties to act as alleged herein.

6        93.    The Kohan Parties acted as alleged herein in reliance on the representations made

7   by Ezri Namvar for himself and on behalf of the Namvar Family and/or the Namvar Entities,

8   including Namco.

9        94.    At the time the Kohan Parties acted as alleged herein, they were ignorant of the

10   absence of any intent to perform, and could not, in the exercise of reasonable diligence, have

11   discovered the absence of intent to perform.

12       95.    As proximate results of the Kohan Parties' reliance on the false representations and

13   the wrongful encumbrances being placed on the properties resulting in the properties being lost

14   through foreclosure, or otherwise, the Kohan Parties have been damaged in an amount to be proven at

15   trial.

16       96.    Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar

17   Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and

18   legal rights or otherwise cause injury.  Such conduct was despicable conduct that subjected the Kohan

19   Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary

20   or punitive damages.

21

22                     **FOURTH CLAIM FOR RELIEF**

23                         (For Fraud)

24       97.    The Kohan Parties reallege and incorporate herein by reference each and every

25   allegation set forth in Paragraphs 1 through 70, inclusive, of this Counterclaim as though fully set

26   forth herein.

27

28

98.     Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, the Namvar Family and the Namvar Entities, concealed material facts from the Kohan Parties.

99.     The material facts were concealed from the Kohan Parties with the intent to induce the Kohan Parties to act as alleged herein.

100.    The Kohan Parties acted as alleged herein in reliance on the representations made by Ezri Namvar for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco.

101.    At the time the Kohan Parties acted as alleged herein, they were ignorant of the concealed facts, and could not, in the exercise of reasonable diligence, have discovery the concealed facts.

102.    As proximate results of the Kohan Parties' reliance and the wrongful encumbrances being placed on the properties resulting in the properties being lost through foreclosure, or otherwise, the Kohan Parties have been damaged in an amount to be proven at trial.

103.    Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and legal rights or otherwise cause injury. Such conduct was despicable conduct that subjected the Kohan Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary or punitive damages.

## FIFTH CLAIM FOR RELIEF

(For Breach of Contract)

104.    The Kohan Parties reallege and incorporate herein by reference each and every allegation set forth in Paragraphs 1 through 70, inclusive, of this Counterclaim as though fully set forth herein.

105.    The Kohan Parties duly performed all promises, conditions, and agreements required of them.

106.   Namco has breached the contracts alleged herein by failing and/or refusing to perform the Club Rio Representations, the Wilde Representations, the Woodman Representations, the Avondale Representations and the Colton Representations, by wrongfully encumbering the properties and allowing said properties to be lost through foreclosure.

107.   As proximate results of Namco's breach, the Kohan Parties have been damaged in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (For Conversion)

108.   The Kohan Parties reallege and incorporate herein by reference each and every allegation set forth in Paragraphs 1 through 70, inclusive, of this Counterclaim as though fully set forth herein.

109.   Ezri Namvar, for himself and on behalf of the Namvar Family and/or the Namvar Entities, including Namco, has converted the property of the Kohan Parties as alleged herein.

110.   As proximate results of the conversion, the Kohan Parties have been damaged in an amount to be proven at trial.

111.   Ezri Namvar, for himself and on behalf of the Namvar Family and the Namvar Entities, including Namco, acted with the intent to thereby deprive the Kohan Parties of property and legal rights or otherwise cause injury. Such conduct was despicable conduct that subjected the Kohan Parties to suffer hardship in conscious disregard of their rights so as to justify an award of exemplary or punitive damages.

WHEREFORE, The Kohan Parties pray for relief as follows:

1.   For general and special damages in an amount according to proof;

2.   For pre-judgment interest;

3.   For punitive and exemplary damages in an amount according to proof;

4.   For a setoff on Plaintiff's claims;

5.   For a determination that the damages alleged herein are non-dischargeable.

6.   For attorneys' fees and costs of suit herein;

7.   For such other relief as the court finds just and proper.

DATED: November 9, 2010

**LAW OFFICES OF GEORGE H. KIM**
GEORGE H. KIM

GEORGE H. KIM, Attorneys For Defendants/
Counterclaimants THEODORE KOHAN and
BUSINESS TO BUSINESS MARKETS, INC.

## DEMAND FOR JURY TRIAL

Defendants hereby demand a jury trial on all of the above stated counterclaims.

DATED: November 9, 2010

**LAW OFFICES OF GEORGE H. KIM**
GEORGE H. KIM

GEORGE H. KIM, Attorneys For Defendants/
Counterclaimants THEODORE KOHAN and
BUSINESS TO BUSINESS MARKETS, INC.

| In re: | | CHAPTER 11 |
|---|---|---|
| NAMCO CAPITAL GROUP, INC. | Debtor(s). | CASE NUMBER: 2:08-bk-32333-BR |
| BRADLEY D. SHARP v. THEODORE KOHAN, ET AL. | | CASE NUMBER: 2:10-ap-02489 -BR |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9800 Wilshire Boulevard, Suite 150, Beverly Hills, California 90212-1804.

A true and correct copy of the foregoing document described FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS THEODORE KOHAN AND BUSINESS TO BUSINESS MARKETS, INC. will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November 9, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

See Attached

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On November 9, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

See Attached

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I    served    the    following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 9, 2010 | George H. Kim | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re:<br>NAMCO CAPITAL GROUP, INC. | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:08-bk-32333-BR |
| BRADLEY D. SHARP v. THEODORE KOHAN, ET AL. | CASE NUMBER: 2:10-ap-02489 -BR |

## ADDITIONAL SERVICE INFORMATION

### I.     TO BE SERVED BY NEF

- Richard Burstein    rburstein@ebg-law.com, ecf@ebg-law.com
- George H Kim    george@gkimlaw.com
- David M Poitras    dpoitras@jmbm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

### II.     SERVED BY U.S. MAIL OR OVERNIGHT MAIL

Honorable Barry Russell
UNITED STATES BANKRUPTCY COURT
Roybal Federal Building
225 East Temple Street, Suite 1660
Los Angeles, CA 90012

### III.     SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR E-MAIL

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                F 9013-3.1